# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| DONALD J. BUCKLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 5:13-CV-06142-NKL |
| | ) |
| JOHNSON CONTROLS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Pending before the Court are Plaintiff Donald Buckler's motion to remand, [Doc. # 11], and Defendants Johnson Controls, Inc., Johnson Controls Battery Group, Inc., Larry Johnson, David Glidewell, and Greg Kline's motion to dismiss, [Doc. # 13]. For the reasons set forth below, Plaintiff's motion to remand is GRANTED and Defendants' motion to dismiss is DENIED for lack of subject matter jurisdiction.

**I.     Background**

This occupational disease case arises from Buckler's alleged exposure to dangerous and toxic levels of lead, trichloroethylene ("TCE"), tetracholorethylene ("PERC"), and other dangerous chemicals, fumes, gases, dust and particulates while employed at a battery manufacturing plant located in St. Joseph, Missouri. Johnson Controls, Inc. and Johnson Controls Battery Group, Inc., both of which are Wisconsin corporations with their principle places of business in Milwaukee, Wisconsin, jointly own

1

and operate the St. Joseph plant. Johnson, Glidewell, and Kline are all Missouri residents who worked with Buckler at the St. Joseph plant.

Buckler generally alleges that Defendants' negligent failure to require or provide adequate respiratory protection, personal protective equipment, ventilation, and hygiene facilities caused or contributed to his development of Parkinson's disease. In addition, Buckler's amended state court petition sets forth the following, specific allegations of "affirmatively negligent acts" against Johnson, Glidewell, and Kline:

> (a) Defendants Glidewell and Johnson directed and required Plaintiff to work in areas of the battery manufacturing plant where they knew Plaintiff would be exposed to toxic levels of lead;
>
> (b) Defendants Glidewell and Johnson directed and required Plaintiff to work in areas of the battery manufacturing plant where they knew Plaintiff would be exposed to toxic levels of lead because the ventilation system and hygiene facilities were not functioning and/or were inadequate;
>
> (c) Defendants Glidewell and Johnson created an unreasonably dangerous condition and environment in the battery manufacturing plant for workers, including Plaintiff, by selecting, approving and/or maintaining a ventilation system that was inadequate and/or did not function for long periods of time, thereby increasing the risk of lead exposure to Plaintiff and other employees;
>
> (d) Defendants Glidewell and Johnson created an unreasonably dangerous condition and environment in the battery manufacturing plant for workers, including Plaintiff, by selecting, approving, and/or maintaining personal protective equipment that was inadequate to protect Plaintiff and other employees from toxic lead exposure;
>
> (e) Defendants Glidewell, Kline, and Johnson affirmatively misrepresented the workplace environment as safe from toxic lead exposure for Plaintiff and other employees, which was material and not true and which Defendants Glidewell and Johnson knew to be false or did not know the truth or falsity, inducing Plaintiff and others to reasonably rely on such misrepresentations in deciding to continue working in such conditions and

Plaintiff did rely on such misrepresentations in deciding to continue working at the plant;

(f) Defendants Glidewell and Johnson required and instructed Plaintiff to work with solvents containing toxic levels of lead, PERC and TCE, while knowing of their dangerous properties, and without appropriate personal protective equipment;

(g) Defendants Glidewell, Kline and Johnson misrepresented the workplace environment as safe from toxic lead, PERC and TCE exposure for Plaintiff and other employees, which was material and not true and which Defendants Glidewell and Johnson knew to be false or did not know the truth or falsity, inducing Plaintiff and others to reasonably rely on such misrepresentations in deciding to continue working in such conditions and Plaintiff did rely on such misrepresentations in deciding to continue working at the plant;

(h) Defendant Kline increased the risk of harm to Plaintiff and other employees at the battery manufacturing plant by administering testing and monitoring procedures that did not adequately test for toxic exposure to lead, PERC and TCE while knowing that Plaintiff and other employees were being exposed to such chemicals in quantities that could cause damage to their health;

(i) Defendant Kline increased the risk of harm to Plaintiff by certifying that he was fit to work in the battery manufacturing plaint after becoming aware that Plaintiff was exhibiting signs and symptoms of neurological damage.

On December 13, 2013, Defendants removed this case on the basis of diversity jurisdiction, claiming that the non-diverse defendants had been fraudulently joined.

## II. Discussion

It is undisputed that Buckler and the individual defendants are all Missouri citizens, such that diversity jurisdiction does not exist unless these defendants have been fraudulently joined. Fraudulent joinder is "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003). Fraudulent joinder occurs, and

3

federal jurisdiction will be retained, if there is "no reasonable basis in fact and law supporting a claim against the resident defendants." *Id.* at 810. If, however, "there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." *Id.* The term "colorable" describes "an alleged cause of action that is reasonable, but speculative." *Id.* at 810, n.10.

The removing party has the burden of proving that joinder is fraudulent and "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court," *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011), including any "ambiguities in the current controlling substantive law," *Filla*, 336 F.3d at 811. The reasonable basis standard articulated in *Filla* is distinct from, and less demanding than, the Rule 12(b)(6) plausibility standard, meaning the removing defendant must "do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion." *Knudson*, 634 F.3d at 980; *see also Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445-46 (8th Cir. 2010); *Dollens v. RSC Equip. Rental, Inc.*, No. 12-04271-CV-W-FJG, 2013 WL 822096, at *5 (W.D. Mo. Mar. 6, 2013). Accordingly, "where the sufficiency of the complaint against the non-diverse defendant is questionable, the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide." *Filla*, 336 F.3d at 811 (quotation omitted); *see also Dollens*, 2013 WL 822096, at *1; *Barnes v. Dolgencorp, Inc.*, No. 06-0632-CV-W-ODS, 2006 WL 2664443, at *1 (W.D. Mo. Sept. 14, 2006).

Defendants argue that Johnson, Glidewell, and Kline have been fraudulently joined because Buckler has not alleged that these co-workers breached any duty that might give rise to an actionable claim for negligence against them.  Under Missouri law, an employee owes no personal duty to co-workers to perform the employer's non-delegable duty to maintain a safe work environment and, accordingly, cannot be sued for the negligent breach of this duty.  *State ex rel. Burns v. Smith*, 214 S.W.3d 335, 337-38 (Mo. 2007); *Hansen v. Ritter*, 375 S.W.3d 201, 213-14, 216 (Mo. Ct. App. 2012), *reh'g and/or transfer denied*, (July 31, 2012), *and transfer denied*, (Sept. 25, 2012).  Consequently, to state an actionable claim against a co-worker, the plaintiff must allege that the co-worker breached "a personal duty" that exists "separate and apart from the employer's non-delegable duties." *Gunnett v. Girardier Bldg. & Realty Co.*, 70 S.W.3d 632, 642 (Mo. Ct. App. 2002); *see also Hansen*, 375 S.W.3d at 213.  Such a personal duty arises when the defendant "engages in an affirmative act, outside the scope of employer's non-delegable duties, directed at a worker, increasing the risk of injury." *Gunnett*, 70 S.W.3d at 641.

The type of conduct that will give rise to co-employee liability "can best be described as an affirmative act that creates additional danger beyond that normally faced in the job-specific work environment." *Burns*, 214 S.W.3d at 338.  This concept, which is sometimes referred to as the "something more" test, "includes the commission of an intentional tort," as well as "an act in which an employee directs a co-employee to encounter a hazard," and has more generally been described "in terms of purposeful, affirmatively dangerous conduct." *Id.* (quotation omitted).  Missouri courts apply this

5

test "on a case-by-case basis with close reference to the facts in each individual case." *Id.* (quotation omitted).

Defendants argue that Buckler has failed to state a colorable claim against the non-diverse defendants because he has not specifically alleged that any of these defendants breached a personal duty that exists separate and apart from the employer's non-delegable duties. However, Buckler's amended petition alleges that the individual defendants "engaged in affirmatively negligent acts that purposefully and dangerously caused or increased [his] risk of injury," [Doc. # 1-2 at 12], which can give rise to the existence of such a duty, *see, e.g.*, *Gunnett*, 70 S.W.3d at 641. Consequently, Buckler's failure to use the precise words "personal duty," or otherwise specifically identify the duty at issue, is at most a matter of inartful pleading and does not compel a finding that the individual defendants have been fraudulently joined. *See, e.g.*, *Knudson*, 634 F.3d at 980 ("In this analysis [fraudulent joinder], we do not focus on the artfulness of the plaintiff's pleadings.").

Turning to Buckler's more substantive allegations, resolving all ambiguities in favor of remand, Buckler has stated a colorable claim against the non-diverse defendants. Buckler's allegation that Glidewell and Johnson directed him to work in areas of the plant where he would be exposed to toxic chemicals despite their knowledge that the ventilation system was not functioning for long periods of time and that employees lacked adequate personal protective equipment makes this case analogous to the Missouri Court of Appeals' decision in *Groh* and the Eighth Circuit's decision in *Knudson*. In *Groh*, the plaintiff's job involved operating a plastic molding machine, which was

6

malfunctioning by sporadically compressing on its own. *Groh*, 148 S.W.3d at 16. When informed of the malfunction, the defendant supervisor "failed to inspect and fix it or have someone else correct the malfunction," and told the plaintiff to " 'quit whining,' and 'just deal with it.' " *Id.* The *Groh* court found this sufficient to state a claim against the supervisor, reasoning that "[a]lthough [the supervisor] is not alleged to have caused the machine to malfunction, her alleged conduct of compelling [the plaintiff] to continue to perform her duties by operating the known dangerous machine that was likely to injure the operator effectively created the dangerous condition resulting in the injuries sustained by [the plaintiff]." *Id.*

Analogizing the case to *Groh*, the Eighth Circuit in *Knudson* found that the plaintiff had stated a colorable claim against a co-worker based on allegations that are very similar to those at issue in this case. In *Knudson*, the plaintiff filed suit against his former supervisor for injuries he sustained as a result of inhaling paint particulate at a construction site. *Knudson,* 634 F.3d at 972-73. Specifically, the plaintiff alleged that the supervisor "committed affirmative acts of negligence by providing inadequate breathing masks and by instructing him to continue installing the HVAC systems despite knowing that the construction sites were very poorly ventilated." *Id.* In concluding that the supervisor had not been fraudulently joined, the *Knudson* court reasoned that the supervisor "did not introduce the paint particulate into the air inside the construction sites, but, like *Groh*, [the supervisor] may have 'effectively created the dangerous condition' by ordering [the plaintiff] to work in an environment where [the supervisor] knew the employees he was supervising were having breathing problems." *Id.* at 981-82.

Similarly, in this case, Buckler alleges that Johnson and Glidewell knew that the ventilation system was not functioning and that the employees did not have appropriate personal protective equipment, but nonetheless ordered Buckler to work in areas of the plant where he would be exposed to toxic substances. [Doc. # 1-2 at 12-13]. The clear inference is that the ventilation system and personal protective equipment were meant to mitigate the risks attendant to this exposure, such that working without them created an additional danger beyond that normally faced in the battery manufacturing plant. Accordingly, the Johnson and Glidewell may have effectively created a dangerous condition by requiring Buckler to continue working despite the lack of ventilation and personal protective equipment. *See Knudson,* 634 F.3d at 981-82.

Defendants attempt to distinguish *Knudson* on the grounds that this is not a case where "the danger was obvious to all," because Buckler alleges that the link between exposure to lead, TCE, and PERC and the development of Parkinson's disease was not reasonably discoverable until after June of 2012. [Doc. # 17 at 16]. Defendants' lack of knowledge of this particular risk, however, does not necessarily establish that they had no knowledge at all that exposure to the toxic substances identified in Buckler's petition presented a health risk. Presumably, proper ventilation and personal protective equipment were designed to reduce this risk, and it is not unreasonable to believe, as Buckler alleges, that the individual defendants were aware that a nonfunctioning ventilation system and the lack of personal protective equipment posed a danger to employees, even if they did not know that it might contribute to the development of a particular medical condition. Buckler's claim that Johnson and Glidewell effectively

created a dangerous condition by ordering him to work in an unventilated worksite and without proper protective equipment is not dependent on their actual knowledge of the specific link between exposure to the chemicals at issue and Parkinson's disease. *See, e.g.*, *Robinson v. Mo. State Highway & Transp. Comm'n*, 24 S.W.3d 67, 78 (Mo. Ct. App. 2000) ("[T]he test for proximate cause is not whether a reasonably prudent person would have foreseen the particular injury, . . . . It is only necessary that the party charged knew or should have known there was an appreciable chance some injury would result." (quotations omitted)).

In addition, to the extent that Defendants suggest otherwise, the Missouri Court of Appeals' more recent decision in *Hansen* did not alter the governing law in any manner that is material to the decision in *Knudson*. The *Hansen* court undertook a detailed analysis of the jurisprudence on co-employee immunity and concluded that the unifying, dispositive question in such cases is whether the defendant violated a duty that exists independent from the employer's non-delegable duties. *Hansen*, 375 S.W.3d at 210-14. The court further found that the "something more" test simply restated this general principle, such that the cases that "have refined the 'something more' test remain instructive in defining a co-employee's personal duties." *Id.* at 215-16. While the *Hansen* decision helped clarify a somewhat confusing area of the law by focusing the inquiry on duty, there is no reason to suspect that this clarification would have materially affected the outcome in *Knudson*.

Furthermore, it is clear that co-worker liability might arise where a supervisor instructs an employee to continue working after learning that a piece of machinery is

9

defective in a manner that presents a safety risk. *See Kocher*, 2011 WL 98832, at *3 (holding that a Missouri court might impose liability on the individual defendants based on the allegation that they "instructed plaintiff to use a truck that they knew was in a dangerous condition, had been improperly repaired numerous times, and was not equipped with a functioning safety belt."); *Burns*, 214 S.W.3d at 340; *Groh*, 148 S.W.3d at 16. Consequently, Buckler's allegation that the individual defendants affirmatively represented that it was safe to work in the plant and ordered Buckler to continue working, notwithstanding the malfunctioning ventilation system, further supports the conclusion that Buckler has sated a colorable claim against these defendants. Buckler's allegations of affirmative misrepresentations may also provide an alternative basis on which a Missouri court might impose liability. Although an employer's non-delegable duties include the duty "to warn employees about the existence of dangers of which the employees could not reasonably be expected to be aware," *Hansen*, 375 S.W.3d at 208 (quotation omitted), Defendants have cited no authority that suggests an employee's affirmative misrepresentations that a workplace is safe, which persuaded another employee to continue working in a dangerous environment, could never give rise to co-worker liability. As this appears to be a question of first impression, rather than definitively settling this ambiguous question of state law, the proper course is to remand the case and leave this issue for the state courts to resolve. *See Filla*, 336 F.3d at 811

Finally, Defendants' remaining arguments concerning the exclusivity provision of Missouri's Worker's Compensation Act have no bearing on the propriety of remand. Where, as here, affirmative acts of negligence are alleged, the defendant is subject to suit

"regardless of the exclusivity provisions of the workers' compensation statute." *Kocher*, 2011 WL 98832, at *3 (citing *Burns*, 214 S.W.3d at 338). Because the non-diverse defendants have not been fraudulently joined, this Court lacks subject matter jurisdiction over this dispute and the case must be remanded. *See* 28 U.S.C. § 1447(c).

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss, [Doc. # 13], is DENIED for lack of subject matter jurisdiction, Buckler's motion to remand, [Doc. # 11], is GRANTED and this case is hereby REMANDED to the Circuit Court of Buchanan County, Missouri.

/s Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 8, 2014
Jefferson City, Missouri